IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


SONIA M. TRUJILLO,

      Plaintiff,

v.                                                              CIV 11-0218 JCH/WDS

HINES INTERESTS LIMITED
PARTNERSHIP,

      Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Hines Interests Limited

Partnership's Motion for Summary Judgment [Doc. 29]. The Court, having reviewed the parties'

submissions and the relevant law, finds the Motion should be **granted.**

## BACKGROUND

The facts of this case are undisputed.[1] Defendant Hines Interests Limited Partnership

("Hines") hired Plaintiff Sonia M. Trujillo as a Staff Accountant on January 7, 2008. *See* Doc.

29 at 4, ¶ 2; Doc. 31 at 2. Hines is a privately-held company that develops, manages, and invests

in commercial real estate around the world. *See* Doc. 29 at 4, ¶ 1. Although it is based in

Houston, Texas, Hines operates an Albuquerque office with four employees. *See* Doc. 29 at 4, ¶

1; Doc. 31 at 2. Plaintiff was responsible not only for performing accounting duties but also

administrative and receptionist functions in the Albuquerque office. *See* Doc. 29 at 4, ¶ 2. Her

immediate supervisor throughout the course of her employment was Bill Marek. *See* Doc. 29 at

---

[1]Although Plaintiff asserts that "[s]ome facts contained in Hines Interests' 'Statement of undisputed facts' are disputed," she does not identify any particular fact that she disputes and fails to cite any evidence in support of such a dispute. *See* Doc. 31 at 1-3. As such, the Court will consider Defendant Hines' asserted facts as undisputed. *See* FED. R. CIV. P. 56(e).

4, ¶ 3.

Plaintiff underwent a week of training at the outset of her employment, followed by software courses and three one-on-one sessions, each lasting several days, with Hines' Regional Trainer Delinda Cannon.  *See* Doc. 29 at 4-5, ¶ 4.  Despite this training, Plaintiff admits that Mr. Marek, Ms. Cannon, and Project Accountant Tabitha Okeke each spoke to her about mistakes she had made at her job, including using the wrong account number, writing the wrong name on a letter, and posting to the wrong account number.  *See* Doc. 29-3 at 3-4 (pp. 45-46).  Plaintiff admits she knew that some of her mistakes were "a big deal."  *See id.* at 4 (p. 49).

Plaintiff also admits that Mr. Marek discussed her lack of independence with her in August 2008.  *See* Doc. 29 at 5, ¶ 6; Doc. 29-3 at 16 (p. 218).  Subsequently, on September 5, 2008, Ms. Cannon reported having exchanged 53 emails with Plaintiff regarding errors in her Account Receivables and General Ledger—tasks on which she had received previous training. *See* Doc. 29 at 5, ¶ 7.  In October 2008, Defendant began to consider terminating Plaintiff, noting that she was not gaining enough independence and "pushing too much of her work off on to the Houston accounting group without first trying to figure it out for herself" and "repeatedly asking them the same questions month after month."  *See id.* at 6, ¶ 8.

On October 23, 2008, Plaintiff informed Defendant Hines that she was pregnant.  *See id.* at 6, ¶ 9.  Defendant Hines, through Plaintiff's supervisor, Mr. Marek, informed Plaintiff of continued problems with her lack of independence in January 2009.  *See id.* at 6, ¶ 10.  On January 9, 12, 15, and 22, 2009, Defendant Hines noted four separate errors made by Plaintiff that had to be corrected.  *See id.* at 7, ¶¶ 11-14.  As a result of this, although Plaintiff was eligible for a 3% merit raise, she received only 1.5%.  *See id.* at 7, ¶ 15; Doc. 31 at 2, ¶ 3.  In the "Job Skills" section of Plaintiff's February 16, 2009 evaluation, Mr. Marek noted

Despite initial and follow-up training sessions along with numerous discussions and meetings covering specific areas where Sonia is not meeting expectations, she continues to consistently make substantial errors and frequently exhibits through correspondence and her work that she does not understand the necessary processes required to fulfill the accounting aspects of her position. Sonia frequently makes the same mistakes repeatedly.

Sonia continues to make errors when posting cash receipts. Many times, cash receipts are applied incorrectly by Sonia. Additionally, it has been realized that on two occasions invoices have been paid twice and that various paid invoices are coded to the wrong general ledger account. Sonia should review her invoices and the general ledger to ensure that items are not paid twice and that the invoices and cash receipts are correctly posted. Contracts and expenses which are paid monthly need to be identified on GL in an accurate and sequential manner (i.e., Jan, Feb, Mar, etc.). This position requires obtaining a thorough knowledge of applying credit, debit and reversing entries which. Despite initial and follow-up training sessions, Sonia still has not demonstrated to be self-sufficient in these accounting areas.

Sonia needs to establish and retain a thorough understanding of her accounting responsibilities and be able to perform these responsibilities. It was recognized that Sonia had filed several Rent Letters which were not the final versions that were mailed to the tenant into the permanent record file. She did not file the correct rent letters. Sonia needs to maintain better records with correct documents. Sonia is to manage the New Vendor, Monthly Petty Cash Reconciliation and Insurance Certificate programs in accordance with the Hines Best Practice requirements.

Doc. 29-1 at 13-14. In addition to this evaluation, Hines also prepared an extensive Employee

Counseling Form, listing "specific changes the employee must make to correct the problem."

*See* Doc. 29-1 at 20-21. Plaintiff never signed the Form, because Plaintiff did not report to work

on February 16, 2009. Instead, Plaintiff informed Ms. Okeke by text that her doctor had

"ordered [her] to stay off [her] feet for a couple days." *See* Doc. 29-1 at 22. Plaintiff then

provided a doctor's note stating that although Plaintiff was only 29 weeks pregnant, "[s]he

should be excused from work till the end of pregnancy" due to "siatic" [sic] pain.  *See* Doc. 29-1 at 23.

Ultimately, Plaintiff was approved for short-term disability benefits through June 4, 2009.  *See* Doc. 29 at 9, n.2.  Hines determined that it was not feasible for the Albuquerque office, even with the part-time assistance of a Houston employee, to assume all of Plaintiff's duties.  *See id.* at 10-11, ¶¶ 21-23.  Moreover, considering Plaintiff's performance issues, Hines determined it was also not feasible to hold Plaintiff's position open for her or to offer her continued employment upon expiration of her disability leave.  *Id.* at 10-11, ¶ 23.  Therefore, on March 16, 2009, Mr. Marek contacted Plaintiff and informed her that she would not be offered employment after her disability leave expired.  *See* Doc. 29-1 at 5, ¶ 29.  Plaintiff's termination was effective June 4, 2009.  *See id.* at 5, ¶ 30.

Plaintiff filed the instant lawsuit in New Mexico's Second Judicial District on February 7, 2011, and served Defendant on February 11, 2011.  *See* Doc. 1 at ¶¶ 1-2.  Defendant timely removed the case to federal court on March 11, 2011.  *See id.*  In her Complaint, Plaintiff alleges gender discrimination in violation of the New Mexico Human Rights Act ("NMHRA") and Title VII of the Civil Rights Act of 1964; discrimination on the basis of a "serious medical condition" in violation of NMHRA; and pregnancy discrimination in violation of Title VII.  *See* Doc. 1-1 at 6-9.

## LEGAL STANDARD

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  A "genuine" dispute exists where the evidence is such that a reasonable

jury could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670

(10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986)).  A mere scintilla of evidence in the non-movant's favor is not sufficient.

*Anderson*, 477 U.S. at 252.  However, the court must consider all the evidence in the light most

favorable to the party opposing summary judgment.  *See Trask v. Franco*, 446 F.3d 1036, 1043

(10th Cir. 2006).

　　Both the movant and the party opposing summary judgment are obligated to "cit[e] to

*particular parts* of materials in the record" to support their factual positions.  FED.R.CIV.P.

56(c)(1)(A) (emphasis added).  Alternatively, parties may "show[] that materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact."  FED.R.CIV.P. 56(c)(1)(B).  *See also Medlock v. United*

*Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an

essential element of the nonmovant's claim, the moving party may satisfy the summary

judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'"

(internal quotation and citation omitted) (alteration in original)).  Materials cited to establish the

presence or absence of a genuine dispute must be in a form that would be admissible in

evidence.  FED.R.CIV.P. 56(c)(2).

　　The court need only consider the materials cited by the parties.  FED. R. CIV. P. 56(c)(3).

In the event that a party fails to cite materials or otherwise properly address another party's

assertion of fact, the court may consider the fact undisputed and, if the motion and supporting

materials show that the movant is entitled to it, grant summary judgment.  FED. R. CIV. P. 56(e).

The court is also empowered to grant summary judgment, if appropriate, independent of the

motion after giving notice and a reasonable time to respond.  FED. R. CIV. P. 56(f).

**B.      Burden-Shifting on Discrimination Claims**

Claims brought under the PDA are analyzed in the same way as other Title VII claims of

disparate treatment.  *See Been v. New Mexico Dept. Of Info. Tech.*, 815 F.Supp.2d 1222, 1235

(D.N.M. 2011) (citing *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999)).  To

make her *prima facie* case, Plaintiff must show that: "'(1) she is within the protected class; (2)

she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and

was ultimately filled by a nonpregnant employee.'"  *Id.* (quoting *Atchley*, 180 F.3d at 1148).

Assuming that Plaintiff can meet this burden—which is "not onerous" and is a burden of

production, not persuasion—the burden of production then shifts to Defendant to articulate a

legitimate nondiscriminatory reason for its action.  *See id.* (quoting *McCowan v. All Star Maint.,*

*Inc.*, 273 F.3d 917, 922 (10th Cir. 2001)).  If Defendant meets this burden, "it then becomes the

plaintiff's burden to show that there is a genuine disputes of material fact as to whether the

employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief."

*Id.* (quoting *Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1158 (10th Cir. 2008)).  "A plaintiff shows

pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factifinder could rationally find them unworthy of credence."  *Swackhammer v. Sprint/United*

*Mgmt., Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (quotations omitted).

**ANALYSIS**

In the present case, Defendant does not contend that Plaintiff cannot prove her *prima*

*facie* case of discrimination.  Instead, Defendant claims it had legitimate, nondiscriminatory

reasons for its decision to terminate Plaintiff's employment.  *See* Doc. 29 at 14.  First, Defendant

contends it had a legitimate business need to fill the position.  *See id.*  Second, Plaintiff's poor

6

job performance is the reason Defendant did not offer her continued employment.  *See id.* at 15.

Plaintiff argues that Defendant has admitted it fired her, in part, for being on pregnancy leave.

*See* Doc. 31 at 5.  Defendant's Senior Manager for Employee Relations, Jay Bennett, testified in

a Rule 30(b)(6) deposition, as follows:

> Q.  Mr. Bennett, why did Hines Interests fire Ms. Trujillo?
> A.  There were—there's—there's two—two reasons.  One is the
> performance, that she was not performing the job as we would
> expect; and two, due to a medical leave of absence, she was going
> to be gone from the property for an extended period of time.
>     The property—again, it was a small staff; and so, every person
> is critical.  And so, there was a need to fill that position.

*See* Doc. 29-2 at 2 (p. 8).  Defendant's position, in Plaintiff's view, constitutes discrimination

*per se* because firing Plaintiff because she was on pregnancy leave is virtually the same as firing

Plaintiff because she was pregnant.  *See* Doc. 31 at 7.

The facts in *Atchley v. Nordam Group, Inc.* are somewhat similar to the present case.  In

*Atchley*, the defendant experienced a reorganization during the plaintiff's pregnancy-related

leave.  *See* 180 F.3d at 1146-47.  When the plaintiff informed the defendant she was ready to

return to work, the defendant informed her that her services were no longer needed in her

previous position.  *See id.* at 1147.  The defendant advised plaintiff that no other positions for

which she was qualified were available.  *See id.*  At trial, the defendant argued that it had treated

other similarly situated employees the same as the plaintiff; in other words, it had not held jobs

open for any similarly situated employees.  *See id.* at 1148.  However, the evidence showed there

were two other employees who were granted leave for reasons not related to pregnancy and who

returned to their positions thereafter.  *See id.* at 1149.  Meanwhile, another employee provided

testimony that she was discriminated against after informing the defendant that she was

pregnant.  *See id.*  Given such evidence, the Tenth Circuit declined to "upset the jury verdict on

this issue." *Id.*

Like the plaintiff in *Atchley*, Plaintiff's employer did not hold her job open for her after maternity leave.  Somewhat akin to the legitimate, nondiscriminatory explanation offered by the defendant in *Atchley*, Defendant Hines argues, in part, that it did not have a position for Plaintiff upon her return from maternity leave.  Unlike *Atchley*, however, Plaintiff does not provide evidence of similarly situated others in the present case.  *See* Doc. 31 at 2-3.  Although Plaintiff's Complaint asserts that "[a]t least one other non-pregnant employee was allowed to take significant medical leave and was allowed to return to her duties after three to five months of leave," *see* Doc. 1-1 at ¶ 23, Plaintiff provides no admissible evidence to support this allegation in response to summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring party asserting a fact to support the assertion by citing to materials in the record, including depositions, documents, declarations, and/or discovery responses).  Moreover, Defendant Hines has sufficiently refuted Plaintiff's allegation, demonstrating through Plaintiff's own testimony that the other employee referenced was not employed in the Albuquerque office, not supervised by Mr. Marek, not a Staff Accountant but "higher up," and not, to Plaintiff's knowledge, having performance-related issues.  *See* Doc. 29 at 21.

Defendant Hines has also shown through Plaintiff's own testimony that the explanation she received from Mr. Marek regarding her termination was entirely consistent with Hines' position in this litigation.  Specifically, Plaintiff testified as follows:

> Q.  You didn't have any reason to believe that Mr. Marek didn't
> need someone to perform your tasks in the Albuquerque office
> [while you were away]?
> A.  No.
> ...
> Q.  Okay.  But do you have any reason to believe that Mr. Marek
> didn't honestly terminate you because of your performance?

> A.  Just from what he told me; it was just he needed to hire
>     somebody else.

Doc. 29-3 at 7-8 (p. 64 & 94).  Given this testimony and the lack of evidence to contradict or

case doubt on Defendant Hines' nondiscriminatory explanation for its actions, the Court finds

that summary judgment is appropriate in favor of Defendant Hines.

## CONCLUSION

For the foregoing reasons, Defendant Hines Interests Limited Partnership's Motion for

Summary Judgment [Doc. 29] is **granted**, and Plaintiff's Complaint is dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE