IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SONIA M. TRUJILLO,

    Plaintiff,

v.                                                        CIV-11-218 JCH/WDS

HINES INTERESTS LIMITED
PARTNERSHIP,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's *Motion for Reconsideration*, filed June 22, 2012 (Doc. 39). In an action for gender discrimination in violation of the New Mexico Human Rights Act ("NMHRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"); discrimination on the basis of a "serious medical condition" in violation of NMHRA; and pregnancy discrimination in violation of Title VII, Plaintiff asserted that Defendant, her former employer, terminated her employment on account of her pregnancy. Defendant subsequently moved for summary judgment, which the Court granted in its Memorandum Opinion and Order of June 20, 2012. (Doc. 37). On the instant motion, Plaintiff contends that the Court committed a clear legal error by applying the wrong legal standard in evaluating her claim. Plaintiff thus requests that the Court alter its final judgment and re-set the case for trial. The Court, having carefully considered the motion, Defendant's response, and the relevant law, and being otherwise fully informed, finds that Plaintiff's motion is not well-taken and should be DENIED.

**DISCUSSION**

Plaintiff brings her motion to reconsider pursuant to Fed. R. Civ. P. 59(e) ("Rule 59(e)"), which warrants alteration or amendment of a judgment in the event of "(1) an intervening change in controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider is also "appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* However, "a motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd*, 43 F.3d 1484 (10th Cir., Dec. 21, 1994) (table). Here, Plaintiff contends that the Court committed clear error by applying the wrong legal standard to her claims.

Where there is no direct evidence of discrimination, a Title VII[1] plaintiff's discrimination claim is analyzed under the burden-shifting framework employed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[2] In the instant case, the Court

---

[1] Claims brought under the Pregnancy Discrimination Act of 1978, which was a definitional amendment to Title VII, are analyzed in the same way as other Title VII claims of disparate treatment. *See* 42 U.S.C. § 2000e(k); *see also Been v. New Mexico Dept. Of Info. Tech.*, 815 F.Supp.2d 1222, 1235 (D.N.M. 2011) (citing *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999)).

[2] Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff. If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proferred reasons for the allegedly discriminatory actions are merely a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802-805 (1973); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

applied the *McDonnell Douglas* test in concluding that, because Plaintiff failed to set forth evidence tending to show that Defendant's proffered nondiscriminatory reasons for firing her were pretextual, Defendant was entitled to summary judgment. Although Plaintiff herself applied the *McDonnell Douglas* test to her claims in opposing Defendant's summary judgment motion – and did not argue that the existence of direct evidence of discrimination obviated the need to apply its burden-shifting analysis – Plaintiff now argues that she "is an example of a Title VII plaintiff who followed the other acceptable method of proof – direct evidence." (Doc. 39 at 2).

Plaintiff does not identify all of the direct evidence of pregnancy discrimination that she maintains the Court failed to consider. Rather, she notes only that the Court's Memorandum Opinion and Order "quotes *some* of the evidence upon which [Plaintiff] relies." *Id.* at 3 (emphasis added). Specifically, Plaintiff points to the Court's quotation of the testimony of Plaintiff's Senior Manager, Jay Bennett, who testified at his deposition that there were "two reasons" Defendant discharged Plaintiff: "One is the performance, that she was not performing the job as we would expect; and two, due to a medical leave of absence, she was going to be gone [ ] for an extended period of time. . . . [I]t was a small staff; and so, every person is critical. And so, there was a need to fill that position." (Doc. 37 at 7) (quotation and marks omitted). Thus, Plaintiff appears to suggest that by invoking her pregnancy-related absence "for an extended period of time" as a reason for terminating her employment, Bennett essentially conceded that Plaintiff was terminated in part because she became pregnant. Plaintiff cites no legal authority for her position that an employer's admission that it terminated its employee in part because it could not afford to keep her position open during an extended medical leave is direct evidence of discrimination on the basis of the employee's underlying medical condition.

3

The Court rejects the argument that, even taken in the light most favorable to Plaintiff, Bennett's testimony is direct evidence of Defendant's discriminatory intent.  On the contrary, numerous courts have held that an employer's acknowledgment that it discharged an employee during or after an extended medical leave because of a professed need to fill the employee's position is actually a legitimate, nondiscriminatory reason supporting the discharge, not direct evidence of discrimination.  *See Ortega v. Cosmair, Inc*., 1993 U.S. App. LEXIS 13469, at * 17 (evidence that "a full-time employee was needed to service [ ] plaintiff's territory" during plaintiff's hospitalization and that plaintiff would be unable to return to full-time employment for several months demonstrated nondiscriminatory reason for discharging plaintiff); *see also Troupe v. May Department Stores Company,* 20 F.3d 734, 738 (7th Cir. 1994) ("[t]he Pregnancy Discrimination Act requires the employer to ignore an employee's pregnancy but…not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees.");  *Soreo-Yasher v. First Office Mgmt.*, 926 F. Supp. 646, 649 (N.D. Ohio 1996) (pregnant employee's discharge following extended leave was not discrimination where there was "no evidence in the record that [plaintiff] was treated any differently than nonpregnant employees who were on leave for a similar period of time"); *Atchley,* 180 F.3d 1143, 1149 (evidence that plaintiff was terminated during pregnancy-related medical absence, during which employer redefined plaintiff's job responsibilities, analyzed under the *McDonnell Douglas* test, and not treated as direct evidence of pregnancy discrimination).

Accordingly, in the face of considerable authority that a pregnant employee's discharge during her extended absence from work -- in the absence of additional evidence of discrimination -- is *per se* evidence of pregnancy discrimination, the Court finds that Plaintiff's motion should be denied.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Reconsideration* (Doc. 39) is DENIED.

                                                                                             _____
                                                                                              **UNITED STATES DISTRICT JUDGE**